UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTHONY JONES,

                Plaintiff,

- against -

DENISE RIVERA,

                Defendant.

**MEMORANDUM**
**DECISION AND ORDER**

16 Civ. 4495 (BMC)

**COGAN,** District Judge.

Plaintiff Anthony Jones brings this action under 42 U.S.C. § 1983, alleging deliberate indifference to his safety in violation of the Eighth Amendment, against Denise Rivera, a corrections officer at Queensboro Correctional Facility ("Queensboro"), where plaintiff was formerly incarcerated. Plaintiff alleges that, while he was incarcerated, he underwent foot surgery, and that defendant subsequently denied him use of the elevator, thus requiring him to take the stairs and causing him to fall and sustain injuries. Defendant moved for summary judgment on the basis that plaintiff has failed to establish a claim of deliberate indifference and that in any event, qualified immunity shields Rivera from liability. For the following reasons, the Court finds that Rivera is entitled to qualified immunity, and defendant's motion is granted.

## BACKGROUND

The following undisputed facts are from the parties' Local Rule 56.1 Statements.

Plaintiff Anthony Jones is a former inmate in the New York State Department of Corrections and Community Supervision ("DOCCS") prison system and assigned to Queensboro. Defendant Rivera was a corrections officer at Queensboro between 2012 and 2015. She was assigned to serve as a medical escort at Queensboro at various points in her tenure, including the date of plaintiff's fall.

Queensboro is a seven-story facility with inmates housed on the fifth and sixth floors and with activities, including the mess hall, on the bottom floors. The mess hall, where all meals are served, is on the first floor. To travel between the floors, inmates generally use the stairs. However, Queensboro does have one elevator, which a medical escort operates. The medical escort is responsible for transporting inmates on that elevator. Inmates are not permitted to ride the elevator alone and must be accompanied by corrections staff. The medical escort, however, is part of the corrections staff, not the medical staff.

Plaintiff disputes the existence of an official elevator policy, as well as the role of the medical staff at Queensboro. Nevertheless, there is no dispute that only medical staff may issue elevator passes and that corrections staff may not issue elevator passes. In addition, the medical staff generates an "elevator pass list," identifying all of the inmates with active elevator passes, and provides this list to the medical escort. However, the elevator pass list is not always updated contemporaneously to reflect real-time changes. The medical staff, not the corrections staff, is responsible for updating the elevator pass list. Notwithstanding the use of elevator passes and the elevator pass lists, medical escorts have discretion to allow inmates on the elevator based on their own observations.

On May 14, 2015, Jones underwent a surgical procedure on his right foot to remove an extra bone. This surgery occurred at the office of an outside medical provider. When Jones returned from the outside medical provider to Queensboro, he met with Nurse Carol Chaveron Angeron, a member of the Queensboro medical staff. During this meeting, Jones was wearing an orthopedic shoe that he received from the outside medical provider. The particular orthopedic shoe Jones wore had an open toe and open heel with Velcro on top, and a portion to protect

plaintiff's ankle, with the top of the shoe stopping at the malleolus. Additionally, Jones had a bandage dressing on his foot.

During the May 14, 2015 meeting, Nurse Angeron issued, *inter alia*, a "Medical Pass / Elevator Pass" to Jones that authorized him to ride the elevator, use a cane and an orthopedic shoe, abstain from gym activities and work, and sleep on the bottom bunk in his cell. The pass had an expiration date of May 22, 2015. After the meeting, Nurse Angeron updated the elevator pass list by hand to reflect that Jones had authorization to ride the elevator until May 22, 2015. The medical staff also generated a typed version of that list, dated May 18, 2015.

On May 21, 2015, Jones visited the outside medical provider again. Later that day, Jones again met with Nurse Angeron, during which time Nurse Angeron renewed Jones's pass. The new expiration date for the renewed pass was May 29, 2015. Despite this renewal, neither Nurse Angeron nor anyone else on the medical staff updated the elevator pass list in any way to reflect the new expiration date.

On May 25, 2015, at the beginning of her shift, Rivera, who was serving as the medical escort for the elevator that day, visited the medical department to pick up a copy of the most recent elevator pass list. The particular list Rivera received that day contained an entry for Jones that showed his elevator pass had expired on May 22, 2015. When lunch time arrived, Jones sought to ride the elevator down to the mess hall. He did not show Rivera his pass and claimed that his pass was "outdated." At the time, Jones was walking with his cane, exhibiting a limp, and wearing his orthopedic shoe.

Despite not being shown an elevator pass and not having Jones on the elevator pass list, Rivera permitted Jones to ride the elevator from his housing floor to the mess hall. While plaintiff was in the mess hall, Rivera called the medical department and spoke to Nurse Anait

Yerknapetian. Rivera inquired as to whether Jones had authorization to ride the elevator and whether he had a valid elevator pass for that day. Nurse Yerknapetian informed Rivera that Jones did not have a valid elevator pass for May 25, 2015.

After lunch concluded, Jones once again sought use of the elevator, asking Rivera for a ride back to his housing floor. Rivera refused to permit him to ride the elevator, advising Jones that he was not on the elevator pass list and that he did not have a valid pass for the day. Rivera told Jones to take the stairs. Thereafter, Jones walked away from the elevator and to the stairs. On his attempt to ascend the stairs, plaintiff fell down the stairs and sustained injuries from his fall.

## DISCUSSION

### I. Standard of Review

"[S]ummary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 135 (2d Cir. 2013) (internal quotation marks omitted). "In determining whether there is a genuine dispute as to a material fact, [the court] must resolve all ambiguities and draw all inferences against the moving party." Id. In ruling on a motion for summary judgment, a district court "may rely on any material that would be admissible at a trial." Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012) (internal quotation marks omitted); see also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., 635 F.3d 48, 52 (2d Cir. 2011) ("[T]he nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." (internal quotation marks omitted)).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major

4

League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted). A dispute is not "genuine" if no reasonable factfinder "could return a verdict for the nonmoving party." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

II. Analysis

The Eighth Amendment, which prohibits the imposition of cruel and unusual punishment, guarantees prisoners humane conditions of confinement and protects inmates from "unnecessary infliction of wanton pain at the hands of prison officials." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (emphasis omitted); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) ("The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.] . . ." (internal quotation marks and citation omitted)).

To state an Eighth Amendment claim based on a condition of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was "sufficiently serious that he was denied the minimal civilized measure of life's necessities," and (2) subjectively, the defendant official acted with "a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer, 511 U.S. at 834 (internal quotation marks omitted)). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). To meet the subjective element, the plaintiff must show that the defendant acted with "more than mere negligence." Farmer, 511 U.S. at 835. Particularly, to constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012). Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder

5

to conclude that the defendant was actually aware of the risk. Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

The parties dispute just how obvious Jones's injury and limp were. Under the standard set forth above, and drawing all inferences in Jones's favor, it cannot be determined on summary judgment that Rivera was not deliberately indifferent to his condition as a matter of law. However, Rivera is nonetheless entitled to qualified immunity.

Qualified immunity inoculates government officials from civil liability where (i) those officials were performing discretionary functions and (ii) "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine is broad in scope, and as the Supreme Court has repeated on several occasions, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

As the Supreme Court has recently held, government officials are entitled to qualified immunity when the "official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted). In practice, this means that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Coollick v. Hughes, 699 F.3d 211, 221 (2d Cir. 2012) (internal quotation marks omitted).

In White v. Pauly, the Supreme Court emphatically reminded lower courts that it is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. at 552 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). For a right to be clearly established, "existing precedent must have placed the statutory or

6

constitutional question beyond debate." Id. at 551 (internal quotation marks omitted). A plaintiff need not produce a case directly on point for a court to conclude that the right was clearly established at the time of the violation, but "c*learly established law must be particularized to the facts of the case*." Id. at 551-52 (emphasis added and internal quotation marks omitted).

Thus, in all cases, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). In other words, "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks omitted). In determining that the lower courts in White had erred, the Supreme Court particularly noted that the courts below had "failed to identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated" the Constitution. White, 137 S. Ct. at 552.

This legal structure compels a finding of qualified immunity. Here, Jones alleges that Rivera violated his constitutional rights when she refused to allow him to ride the elevator from the mess hall to his housing unit on May 25, 2015, and that such conduct was deliberate indifference to his safety. Yet, even when drawing all inferences on disputes in favor of plaintiff, the inescapable conclusion is that Rivera's "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" White, 137 S. Ct. at 551 (quoting Mullenix, 136 S. Ct. at 308). It is undisputed that Rivera contacted the medical staff after she permitted plaintiff to ride the elevator down to the mess hall, and it is further undisputed that one of the nurses advised her that Jones did not have a valid

7

elevator pass. Armed with guidance from the medical staff, Rivera refused to permit plaintiff to ride the elevator back up to his housing floor. There is no clearly established law that a corrections officer is required to disregard instructions by medical staff and independently determine medical need. As a result, plaintiff's argument that Rivera could have and should have exercised her own judgment to disregard the nurse's information is beside the point.

The Second Circuit has in fact upheld reliance on medical instructions as meriting qualified immunity, not only for non-medical staff asked to intervene, but also where other doctors were asked to intervene regarding another doctor's diagnosis. See Cuoco v. Moritsugu, 222 F.3d 99, 111 (2d Cir. 2000) (granting qualified immunity to corrections staff that followed instructions from medical personnel because the warden's and health service administrator's "failure to intercede in the medical treatment of an inmate was, if wrongful, not objectively unreasonable"); id. (finding that "[a] doctor associated with a prison cannot be held responsible for failing to intercede in the treatment of a prisoner . . . not their patients . . . simply because the patient demanded it" and that such failure to intervene "was objectively reasonable as a matter of law"). Thus, Rivera's reliance on the medical department's direction that Jones was not permitted to ride the elevator entitles her to qualified immunity.

In his opposition to defendant's motion for summary judgment, plaintiff fails to engage with the qualified immunity analysis. Instead, his opposition is devoted entirely to the disputed issues concerning deliberate indifference. Despite plaintiff's failure to address the issue, the Court has independently considered the law and finds that Rivera is entitled to qualified immunity.

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment in favor of defendant, dismissing the complaint.

**SO ORDERED.**

                                                                                U.S.D.J.

Dated: Brooklyn, New York
        May 31, 2017